**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **LISA LOUKS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  **Civil Action No. 1:20-cv-1778** |
| | ) |
| **COSTCO WHOLESALE CORPORATION** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Lisa Louks ("Louks"), by counsel, for her Complaint and Jury Trial Demand against Costco states as follows:

## I.    INTRODUCTION

1.      This is an action brought by Lisa Louks against Defendant Costco Wholesale Corporation ("Defendant"), between which parties there is an employment relationship. Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C., *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), by discriminating against Ms. Louks on the basis of her disabilities and retaliating against Ms. Louks after she requested accommodations.  Defendant acted deliberately and violated Ms. Louks' civil rights because of her disabilities.

## II.    EEOC COMPLIANCE

2.      Ms. Louks exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3.      On or around June 21, 2019, Ms. Louks filed EEOC Charge No. 470-2019-03202.

4.      On or about January 28, 2020, Ms. Louks filed her Second Amended Charge.

5.      On or about April 3, 2020, the EEOC mailed a Dismissal and Notice of Rights to Ms. Louks.  A true and correct copy of the Dismissal and Notice of Rights is attached hereto as Exhibit 1.

6.      This civil action is being initiated within 90 days of Ms. Louks' receipt of the EEOC Dismissal and Notice of Rights.

### III.      JURISDICTION

7.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 451, 1331, 1337, and 1343.  This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

8.      Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42. U.S.C. § 12117.

9.      The alleged discriminatory acts were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

### IV.      VENUE

10.     Ms. Louks is a resident of Marion County in the State of Indiana and is a citizen of the United States of America.

11.     Defendant Costco Wholesale Corporation's headquarters are located in Issaquah, King County, Washington.

12.     The discriminatory acts under the ADA alleged below arose in Marion County, Indiana.  Marion County is located in the Southern District of Indiana; thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for

an action to be brought in the district where the Defendant resides or in which the cause of action arose.

## V.    PLAINTIFF

13.    Ms. Louks is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Marion County in the State of Indiana.

14.    Ms. Louks resides in Indianapolis, Indiana.

15.    Ms. Louks is a person entitled to protection under the ADA based on disabilities.

## VI.    DEFENDANT

16.    Costco Wholesale Corporation is located at 999 Lake Drive, Issaquah, Washington 98027.

17.    Costco Wholesale Corporation does business in the State of Indiana.

18.    Ms. Louks was employed at Costco Wholesale Corporation located at 6110 East 86th Street, Indianapolis, Indiana 46250.

19.    At all times relevant to this action, Defendant employed Ms. Louks.

## VII.    GENERAL FACTUAL ALLEGATIONS

20.    Ms. Louks was employed by Defendant as a part-time pharmacist at Warehouse #346 at 6110 East 86th Street, Indianapolis, IN 46250.

21.    Ms. Louks' typical schedule consisted of three (3) eight (8) hour shifts and one (1) six (6) hour shift each week.

22.    Ms. Louks has been employed by Costco for over seven (7) years.

23.    At all relevant times, Costco's general store manage was Mike Donaldson ("Donaldson") and Ms. Louks' pharmacy supervisor was Mary Purvis ("Purvis").

24.     In the fall of 2018, Ms. Louks began experiencing back pain and was eventually diagnosed with having a herniated disc.

25.     In early December of 2018, Ms. Louks was also diagnosed with arthritis and degenerative disc disease.

26.     As a result of her herniated disc, Ms. Louks underwent back surgery on December 27, 2018.  After that surgery, Ms. Louks was on FMLA leave for two (2) weeks.

27.     During a post-operation appointment, Ms. Louks' doctor instructed her that she needed to sit every two (2) hours and to gradually increase her standing time as her body allowed.

28.     Ms. Louks' doctor, Dr. Flynn Andrew Rowan ("Dr. Rowan"), wrote a letter requesting this accommodation from January 10, 2019 through February 7, 2019.

29.     Ms. Louks gave this letter to Defendant.  Thereafter, she was permitted to sit on the stool in the pharmacy as needed.

30.     Unfortunately, Ms. Louks continued to suffer from back pain and re-herniated the disc in her back after she returned to work.

31.     As such, Ms. Louks continued to need the ability to sit on the stool periodically during her shift.

32.     On February 28, 2019, Dr. Rowan completed a "Return to Work" form that stated Ms. Louks had been cleared to return to work but could not stand for prolonged periods of time.

33.     The form further stated that her date of return without restrictions would be updated after Ms. Louks appointment on March 27, 2019.

34.     On April 7, 2019, Ms. Louks received a letter from Costco's general store manager, Mike Donaldson ("Donaldson"), that was dated February 21, 2019.

35.     The letter stated that Costco was offering Ms. Louks a "temporary transitional position of Pharmacist" on a part-time basis from January 14, 2019, to February 24, 2019.

36.     The letter stated that Ms. Louks' pay would not be affected during the "transitional" time.

37.     However, the letter went on to say that if Ms. Louks' restrictions went on beyond February 24, 2019, her "transitional duty assignment" would be "reevaluated."

38.     When Donaldson presented Ms. Louks with this letter, he made her extremely uncomfortable, and she was led to believe that she had no option but to sign it if she wanted to be paid.

39.     That same day, on April 7, 2019, Donaldson gave Ms. Louks a second letter dated February 21, 2019.

40.     The second letter contained the same language as the first but said the "temporary transitional position" was available to her from February 25, 2019 to April 7, 2019.

41.     During the second week of April of 2019, Ms. Louks' doctor renewed her accommodation request because she was still experiencing problems with her back.

42.     Donaldson gave Ms. Louks another letter on April 15, 2019.  The letter stated that "temporary transitional duty" is "not a regular job, it is provided to assist employees when possible and is limited to 12 weeks."

43.     The letter further stated that Ms. Louks had exhausted her "12 weeks of transitional duty work" and the restrictions imposed by her doctor "were [continuing] to prevent her from performing all of the essential functions of her position of Pharmacist Hourly, with or without temporary accommodations . . . Accordingly, a leave of absence has been approved."

44.     Donaldson had already completed the forms for Ms. Louks to go on personal medical leave effective immediately without any mention of it to Ms. Louks.

45.     The forced medical leave was set to run from April 15, 2019 through June 26, 2019.

46.     Ms. Louks asked Donaldson why her request for an accommodation—sitting on a stool periodically—had been denied and how standing for a full shift could be considered an "essential function" of being a pharmacist.

47.     In response, Donaldson led Ms. Louks to believe that he had consulted with the Human Resources Department ("HR") regarding her situation, and he was merely following HR's guidance.

48.     Costco never provided Ms. Louks with any information or statistics showing that her work productivity or quality had dropped during the times she had been using the stool during her shifts in the pharmacy.

49.     Notably, there was always a stool located in the pharmacy in the past, which was approved for another staff member to use. In addition, Ms. Louks even used a stool several years earlier during her pregnancy without issue. At no point prior to Ms.  Louks' reasonable accommodation request did Donaldson or any other employee raise an issue related to the stool.

50.     Furthermore, despite being offered with a reasonable accommodation, Costco unreasonably denied Ms. Louks' request and failed to seek alternative accommodations or seek input from medical professional for other possible accommodations.

51.     When Ms. Louks returned home after being forced to go on FMLA leave, she emailed HR to ask why her request for the intermittent use of had stool had been denied and why standing for a full-shift was considered to be an essential part of being a pharmacist at Costco. Ms.

Louks worked as a pharmacist at several different pharmacies throughout her career and she has never been told that standing for an entire shift is an essential job function for pharmacists.

52. After a week with no response from HR, Ms. Louks called HR and was put through to Sarah Pattee's ("Pattee") voicemail.

53. When Pattee eventually returned Ms. Louks' call, Pattee said HR did not have a case file on her and there was no record of Donaldson calling HR to discuss Ms. Louks' condition and need for accommodation.

54. On April 29, 2019, Donaldson called Ms. Louks and said he had talked to Ms. Louks' pharmacy manager, Mary Purvis ("Purvis").

55. Based on that conversation, Donaldson said Costco would allow Ms. Louks to work five (5), five (5) hour shifts with a fifteen-minute (15) break per five (5) hour shift.

56. When Ms. Louks told Costco that this proposal was not consistent with her doctor's orders, Costco did not provide Ms. Louks with any other scheduling options.

57. Costco also did not offer another type of accommodation for Ms. Louks or seek input from medical professionals.

58. On May 2, 2019, Ms. Louks received an email from Pattee.

59. In that email, Pattee stated that it was her understanding that Donaldson had addressed all of Ms. Louks' concerns and that all future discussions relating to possible accommodations that would allow her to "perform the essential functions" of her position would be handled by Donaldson.

60. Pattee further stated that if Ms. Louks' work-related restrictions changed in the future, Ms. Louks should contact Costco and other possible accommodations could be addressed at that time.

61.     On June 21, 2019, Ms. Louks filed an EEOC Charge as a result of Costco's failure to accommodate her disability and forcing her to take medical leave.

62.     After filing her initial EEOC Charge, Costco continued to discriminate and retaliate against Ms. Louks as a result of her disability and request for a reasonable accommodation.

63.     Additionally, Costco continued to refuse to accommodate Ms. Louks by allowing her to use a stool on an intermittent basis while working.

64.     On July 15, 2019, while on forced medical leave, Ms. Louks had another surgery on her back.

65.     After her surgery, Ms. Louks attempted to reach out to HR again with several questions including whether Costco's twelve (12) week accommodation time limit would reset after her second surgery.

66.     HR never responded to Ms. Louks.

67.     On August 12, 2019, Ms. Louks' physician released to return to work.

68.     Despite being released by her doctor on August 12, 2019, Costco did not allow Ms. Louks to return to work for over two months; Ms. Louks was never provided with an explanation for the delay.

69.     This delay in returning to work caused Ms. Louks to lose wages.

70.     Despite informing Costco that she was eligible to return to work on August 12, 2019, Ms. Louks received a letter from Costco Benefits Department stating that her eligibility for benefits would expire on October 13, 2019 unless she was able to return to work.

71.     On September 5, 2019, Ms. Louks spoke to Costco to see what the return to work note from her neurosurgeon needed to say so that she would be able to return to work.

72.     Ms. Louks also reminded Costco that she had been released to return to work and would still need the intermittent use of the stool during her shifts.

73.     In response, Costco informed Ms. Louks that she could not return to work until her doctor completed a three (3) page document detailing what she could and could not do at work upon her return.  Costco further stated that it would decide what job she would be able to do upon her return to work.

74.     On September 16, 2019, Ms. Louks physician wrote a letter to Costco stating that Ms. Louks had been released to return to work on August 12, 2019, and she could perform all job functions but would need the intermittent use of a stool.

75.     Costco never responded to Ms. Louks or her doctor after this letter was sent.

76.     On October 7, 2019, a representative from Unum contacted Ms. Louks to help "facilitate" her going back to work at Costco.

77.     The representative stated that Ms. Louks would need to provide Unum with more specific information regarding her accommodations.  Specifically, Unum wanted to know exactly how long Ms. Louks could stand before she needed to sit down.  The representative further stated that Ms. Louks use of a stool for an indefinite amount of time was "unsatisfactory" for Costco.

78.     On October 11, 2019, Donaldson called Ms.  Louks and told her that she would be allowed to return to work for a four (4) week trial period starting on October 14. During the call, Donaldson told Ms. Louks that she would have to show that she could perform all of her job duties to continue working beyond the four (4) week trial period.

79.     On October 15, 2019, Ms. Louks received an email from Donaldson with "transitional duty paperwork."

80.     Donaldson further stated that Ms. Louks would be permitted to use a stool during her shifts for up to twelve (12) weeks.  If her need for the stool continued past the twelve (12) weeks, Donaldson stated that Ms. Louks would have to go back on medical leave.

81.     Ms. Louks also received a letter dated October 12, 2019.  The letter stated that Costco was offering Ms. Louks a temporary transitional duty position on a part-time basis from October 14, 2019 to November 10, 2019.  The letter further stated that if Ms. Louks' restrictions went beyond November 10, 2019, Costco would reevaluate her transitional duty.

82.     Despite having been scheduled to be out for a vacation from October 14, 2019 through October 18, 2019, Costco counted those days towards Ms. Louks' four (4) week trial period.

83.     On October 22, 2019, Ms. Louks returned to work and had her yearly performance review meeting with her pharmacy manager, Mary Purvis("Purvis").

84.     There was nothing in the yearly review indicating that Ms. Louks could not perform the essential functions of her job or that there had been issues with her performance.

85.     However, Ms. Louks decided to specifically ask Purvis if she had any issues with her performance.  In response to this question, Purvis merely stated that she wanted to start working at Ms. Louks' pharmacist terminal.  This was a very odd request that took Ms. Louks by surprise.

86.     That same day, Ms. Louks realized that Costco had replaced the stool that had been in the pharmacy prior to her medical leave with a very awkward and unstable stool.

87.     The original stool had had four legs and a back rest; however, the new stool had one leg for a base and no back rest.

88.     The new stool was so unstable that Ms. Louks nearly fell off the stool four (4) times during her first shift back at the pharmacy.

89.     After her first day back to work, Costco began to treat Ms. Louks differently than she had been treated before she took medical leave.

90.     For example, prior to her medical leave, Ms. Louks never had to submit written requests for time off.  However, after her return, Costco required her to fill out a written request for time off and submit it to Purvis any time she wanted to take time off of work.

91.     In November of 2019, after submitting a written request for time off, Purvis wrote a note to Ms. Louks that her requests needed to be submitted prior to the pharmacy schedule being posted.

92.     In the nearly six-and-a-half years with Costco, Ms. Louks had never heard of or been told that requests for time off needed to be submitted in advance of the schedule being posted.

93.     Ms. Louks also learned that Purvis started making copies of all of her written requests for time off despite the fact that Purvis kept the original copies of all the requests and Ms. Louks had carbon copies.

94.     On November 15, 2019, Costco gave Ms. Louks another "transitional duty" letter. Costco attempted to force Ms. Louks to sign the letter before she left for work that day.

95.     When Ms. Louks asked if she could see the "Company Policy" referred to in the transitional duty letter, Costco merely said that the policy was set forth in the Transitional Duty Letter.

96.     During this same time period, an ergonomics specialist provided Costco with suggested changes and submitted a report detailing such recommendations.

97.     However, Costco never adopted any of the suggested changes.

98.     The only change Costco made was that it ordered a new stool for Ms. Louks.

99.     However, Costco did not allow Ms. Louks to choose the stool or see it before it was ordered.

100.    When the new stool arrived, Ms. Louks realized that the stool was so big and deep that she was unable to sit in the stool normally and still reach her keyboard.

101.    As such, she was forced to sit sideways which caused her to experience additional back pain.

102.    From October 2019 to January 2020, Ms. Louks used the stool an average of ten (10) to twenty (20) minutes per shift.

103.    At the end of the twelve-week period, on January 3, 2020, Costco forced Ms. Louks go back on medical leave because she continued to require the intermittent use of a stool.

104.    On January 15, 2020, Ms. Louks' physician wrote another letter regarding her condition, which was then provided to Costco.  The letter stated the following:

> Ms. Louks is currently under my care.  From a Neurosurgical standpoint, I released Lisa to return to work on 8/12/10.  She is able to perform all functions of her job, but will still require intermittent daily use of a stool for approximately 5-30 minutes every 1-2 hours.

105.    Ms. Louks suffers from a life-long physical impairment. Her doctor has recommended that she use a stool intermittently while at work as a result of her life-long impairment.

106.    Despite extensive documentation, Costco has and continues to treat Ms. Louks' condition as "temporary" and refuses to provide the requested accommodation, which is reasonable, inexpensive, and in no way causes Costco to suffer from an undue hardship.

107.    On February 19, 2020 Costco sent Ms. Louks another letter asking again for clarification regarding the duration and frequency of her restrictions despite the fact that her medical condition and restrictions have remained the same since at least January of 2019.

108.    Costco has since conceded that "Louks' position required that she be able to stand up for up to five hours during an eight-hour shift;" however, Costco has refused to allow Ms. Louks to return to work.

109.    As such, Ms. Louks remains on forced medical leave despite her desire and ability to return to work.

110.    Ms. Louks has always met or exceeded all of Costco's legitimate performance expectations during her employment.

111.    As a result of Costco's unlawful employment practices, Ms. Louks has incurred lost wages and lost benefits.

112.    As a result of Costco's unlawful employment practices, Ms. Louks has suffered and continues to suffer emotional distress and mental anguish.

113.    Costco's unlawful employment practices were intentional.

114.    Costco's unlawful employment practices were done with malice or reckless indifference to Ms. Louks' federally protected rights.

115.    Ms. Louks is entitled to recover reasonable attorneys' fees and costs.

## <u>COUNT I</u>

**(Discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008)**

116.    Ms. Louks incorporates the allegations of paragraphs 1 through 114 above and, in addition states that Costco's acts and omission in the matter discriminated against her because of her disabilities, her record of disabilities, and/or being regarded as having a disability in violation of the ADA.

117.    Costco is engaged in an industry affecting commerce.

118.    Costco has employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

119.    Defendant satisfies the definition of an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

120.    Ms. Louks at all relevant times herein had the requisite skill, experience, education and other job-related requirements of the position she held with Costco.

121.    Consequently, Ms. Louks is a qualified individual with a disability under 42 U.S.C. § 12111(8).

122.    Ms. Louks is disabled within the meaning of the ADA; that is she has a physical impairment, has a record of, and/or is regarded as having a physical impairment that substantially limits a major life activity, including but not limited to standing for periods of time.  Specifically, Ms. Louks suffers from a herniated disc, arthritis, and degenerative disc disease.  Her various physical impairments were diagnosed in 2018.

123.    Since her diagnosis, at all times relevant, Costco was aware of Ms. Louks' disabilities and her need for reasonable accommodations.

124.    Ms. Louks requested accommodations from Costco orally and in writing on multiple occasions.

125.    Ms. Louks provided Costco with medical documentation from her doctor supporting her need for an accommodation.

126.    Costco intentionally discriminated against Ms. Louks based on her disabilities when it failed and continues to fail to reasonably accommodate Ms. Louks by refusing to allow her to sit on a reasonably sized stool with a back periodically during her shifts in the pharmacy.

127.     Furthermore, Ms. Louks' disabilities were the motivating factor in Costco's decision to force Ms. Louks to take medical leave multiple times, for extended periods of time.

128.     Costco's failure to reasonably accommodate Ms. Louks and its imposition of medical leave against her were discriminatory actions taken against her because of her disabilities in violation of the ADA.

129.     The reasons given for Ms. Louks' forced medical leave are a pretext for disability discrimination.

130.     Other employees without Ms. Louks were treated more favorably than Ms. Louks.

131.     As a result of Costco's discriminatory acts and omissions, Ms. Louks has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

## COUNT II

**(Retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008)**

132.     Ms. Louks incorporates the allegations of paragraphs 1 through 131 above and, in addition, states that Costco's conduct in this matter constituted retaliation against Ms. Louks following her requests for accommodation under the ADA.

133.     Beginning in late 2018, Ms. Louks requested reasonable accommodations from Costco because of her disabilities.

134.     When Costco failed to reasonably accommodate Ms. Louks; she advised the store manager, Donaldson, and requested further accommodations; this was a protected activity.

135.     Although her request for accommodations were partially granted, Costco only granted the request for accommodations for a maximum of twelve (12) weeks.

136.    Costco refused to provide Ms. Louks with sufficient, continuous, reasonably accommodations to allow her to continue to perform her essential job duties.

137.    Costco made it difficult, if not impossible, for Ms. Louks to perform her job, because it refused to adequately accommodate her disabilities.

138.    Because Ms. Louks requested accommodations under the ADA, Costco unnecessarily forced Ms. Louks to take medical leave, multiple times, and prohibited her from earning her wages.  This was an adverse action by Costco.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Louks prays for a judgment in her favor against Costco, and prays that the following relief be awarded:

a)    Grant a permanent injunction enjoining Costco, its officers, successors, assigns, and all other persons in active concern or participation with it from engaging in disability discrimination and any other employment practice, which discriminate on the basis of disability, and from engaging in retaliation.

b)    Order Costco to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled individuals, and which eradicate the effects of its past and present unlawful employment practices.

c)    Order Costco to make whole Ms. Louks by providing appropriate back pay and front pay for the time she was forced to take medical leave for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Ms. Louks' pecuniary losses.

d)      Order Costco to make Ms. Louks whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

e)      Order Costco to make Ms. Louks whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

f)      Order Costco to pay Ms. Louks' punitive damages for its malicious and/or reckless conduct described above in amounts to be determined at trial.

g)      Order Costco to pay Ms. Louks her special damages, in amounts to be determined at trial.

h)      Order Costco to pay damages to Ms. Louks for any and all injuries to her career, in amounts to be determined at trial.

i)      Order Costco to permit Ms. Louks to return to work, with the periodic use of a stool approved by her doctor.

j)      Award Ms. Louks the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable.

k)      Grant such further relief as the Court deems necessary and proper in the public interest.

## IX.    RESERVATIONS OF RIGHTS

Pursuant to the rules of pleading and practice, Ms. Louks reserves the right to assert additional violations of federal and state law.

## X.    JURY TRIAL

Ms. Louks demands trial by jury on all issues so triable.


Respectfully submitted,

*s/ Kimberly D. Jeselskis*
Kimberly D. Jeselskis, Attorney No. 23422-49
Alexandra J. Blackwell, Attorney No. 33963-06
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, IN 46204
Telephone: 317-220-6290
Facsimile:  317-220-6291
kjeselskis@jbjlegal.com
ablackwell@jbjlegal.com

*Counsel for Plaintiff*