UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LISA LOUKS,                          )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )    No. 1:20-cv-01778-JPH-MJD
                                     )
COSTCO WHOLESALE CORPORATION,        )
                                     )
                    Defendant.       )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Lisa Louks suffers from a degenerative back condition that affects her ability to stand for long periods of time without a break.  She alleges that her employer, Costco Wholesale Corp., failed to reasonably accommodate her disability and retaliated against her for filing a charge of discrimination with the EEOC.  Costco has filed a motion for summary judgment.  For the reasons that follow, that motion is **GRANTED in part** and **DENIED in part**.  Dkt. [39].

## I.
## Facts and Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. The parties

#### 1. Lisa Louks

Lisa Louks is a licensed pharmacist who, at all times relevant to the allegations in her complaint, worked part-time in the pharmacy at Costco's Castleton, Indiana warehouse. Dkt. 44-1 at 1 ¶ 2–3. She has worked as a pharmacist at Costco since 2013. *Id.* at 1 ¶ 3. Ms. Louks worked at least 3 eight-hour shifts per week. *Id.* at 2, 3, 11 ¶ 8, 19, 64. Her work mainly consisted of data verification on orders that came into the pharmacy and prescription verification on orders filled. *Id.* at 2–3 ¶ 4–7. She was also responsible for giving vaccines, which is done seated, and consulting with customers. *Id.* at 3 ¶ 7. Occasionally she rang-up customers at the cash register, but that was primarily done by pharmacy technicians. *Id.*

## 2. Costco

Costco owns and operates a chain of retail warehouses that offer a wide range of products. Dkt. 40 at 3 ¶ 4. The Castleton Costco pharmacy is small but busy, and staffed by up to six people. *Id.* at 4 ¶ 9, 11. Mary Kay Purvis worked as the pharmacy manager and reported to the warehouse's general manager, Mike Donaldson. *Id.* at ¶ 7; dkt. 44-1 at 2 ¶ 9.

Costco's written "job analysis" outlines the essential functions for the registered pharmacist job:



Dkt. 38-6 at 2.  During essential functions, Costco required pharmacists to be capable of walking and standing "frequently", and "never" sitting.  *Id.* at 4. "Frequently" is defined as "2-1/2 to 5 hours" during an eight-hour shift.  *Id.*

Costco's policy is to offer twelve weeks of "temporary transitional duty" (TTD) to employees who need accommodation.  Dkt. 38-5  at 24 ("Employee Agreement").[1]  As general manager, Mr. Donaldson had the final say regarding

---

[1] The TTD policy states that "[w]hen you have a release to return to work with restrictions Costco will attempt to reasonably accommodate your restrictions . . . The maximum period of transitional duty is 12 weeks.  If at the end of 12 weeks you are not able to perform your essential job functions you may be required to go on [leave] again."  Dkt. 38-9.

leave and accommodation decisions at Castleton.  Dkt. 44-3 at 15–16 (Donaldson Dep. at 70:23–71:5).

### B. Ms. Louks injures her back and takes leave

In the fall of 2018, Ms. Louks was diagnosed with a herniated disc, dkt. 44-1 at 2 ¶ 11, and arthritis and degenerative disc disease in her spine, *id.* ¶ 12.  Arthritis and degenerative disc disease are permanent conditions that may worsen over time.  *Id.* ¶ 13.  Ms. Louks had surgery for the herniated disc in December of 2018 followed by two weeks of medical leave.  *Id.* ¶ 14.  On December 14, Ms. Louks's doctor, Flynn Rowan, M.D., completed paperwork related to the surgery for Costco.  *Id.* ¶ 15; 19–25 (FMLA paperwork).  Dr. Rowan indicated that Ms. Louks's condition would have a "probable duration" of one year, *id.* at 21, and ordered "[n]o standing longer than 2 hours," allowing increased standing "as tolerated by patient."  *Id.* at 25.

### C. Ms. Louks returns to work

Ms. Louks returned to work in January of 2019.  *Id.* at 3 ¶ 16, 19.  She used a stool that was already in the pharmacy "on an intermittent basis during [her] shift . . . to take pressure off [her] spine."  *Id.* at 3 ¶ 17–18.  In February, Dr. Rowan updated his recommendation to "[n]o prolonged walking or standing – stand only as tolerated."  *Id.* at 26 (Return to work form).  Ms. Louks provided this recommendation to Costco.  *Id.* at 3 ¶ 20–21.

On or around March 16, 2019, Ms. Louks re-herniated her disc.  *Id.* at 4 ¶ 22.  At her next appointment with Dr. Rowan on March 27, Ms. Louks reported that "being able to sit at work allows her to perform her job with

4

minimal disruption or pain." *Id.* at 27 (IU Health records).  Dr. Rowan recommended that Costco "continue to provide a reasonable accommodation to allow her a chair while working." *Id.*  Ms. Louks gave a copy of this report to Costco.  *Id.* at 4 ¶ 23.

On April 7, 2019, Mr. Donaldson, gave Ms. Louks two letters—dated February 21—stating that Costco was offering her a "temporary transitional position" from January 14–February 24 and from February 25–April 7, respectively.  *Id.* at 4 ¶ 24.  Before April 7, Ms. Louks had not been informed that she had been classified in a temporary transitional position.  *Id.* at 4 ¶ 25. Ms. Louks signed the February 21 TTD offer letters on April 7 because Mr. Donaldson "led [her] to believe that [she] had no option but to sign . . .." *Id.* at 4 ¶ 26.  During that meeting, she told him her condition was permanent.  *Id.*

When Ms. Louks went to work on April 15, 2019, she was called to Mr. Donaldson's office. *Id.* at 4 ¶ 27.  He told her that she was being put on leave because her "temporary" restrictions "prevented [her] from performing the essential functions of [her] position as Pharmacist." *Id.* at 5 ¶¶ 27–28.  Ms. Louks reminded him that her condition was permanent and inquired "how standing for a full shift could be considered an 'essential function' of being a pharmacist." *Id.* at 5 ¶ 31.  Mr. Donaldson replied that according to HR policy she had to go on leave because she could not stand for her entire shift and "there were no seated positions at Costco." *Id.* at 5 ¶ 32.

5

Before this conversation with Mr. Donaldson, no one at Costco had said anything to Ms. Louks about how frequently she sat down during work or about an alternative accommodation. *Id.* at 6 ¶ 35.

Paige Hall, a pharmacy technician who often worked entire shifts with Ms. Louks, attested that she never saw Ms. Louks refuse to perform any task, such as providing patient consultations, or ask another co-worker to perform those tasks; no one complained about her use of the stool; and she did not use the stool "for a lengthy period:" at most sitting about 15 minutes at a time. Dkt. 44-6 at 2 ¶¶ 10–15.[2]

### D. Ms. Louks is put on leave

On April 16, Ms. Louks sent Costco HR an email asking why her "simple" accommodation request to use a stool as needed was not granted as it had "not affected her work performance." *Id.* at 33 (Email to HR). HR responded that it did not have a record of her reasonable accommodation request. *Id.* at 6 ¶ 38.

On April 26, 2019, Ms. Louks sent Costco an updated note from Dr. Rowan recommending that "she continue to be afforded the opportunity to use a stool while working." *Id.* at 35 (Apr. 26, 2019, Dr. Rowan letter). On April 29, 2019, Mr. Donaldson told her she could no longer use a stool at work. *Id.* at 7 ¶ 40. He also stated that "if [her] doctor would allow it," she could possibly

---

[2] Costco objects to Ms. Hall's Declaration in its entirety, arguing that it is "so vague and conclusory as to be insufficient to establish a genuine issue of material fact." Dkt. 46 at 5 n.2. However, Costco does not identify specific portions of the declaration that it would seek to strike, and the Court finds Ms. Hall's declaration specific and based on her personal knowledge, so it will be considered under Rule 56. *See Drake v. Minnesota Min. & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998).

"work five (5), five (5) hour shifts."  *Id.*  Ms. Louks told Mr. Donaldson that she would speak with her doctor, but she did not get back to him regarding that offer because it would not allow her to sit while working as required by Dr. Rowan.  *Id.*

On May 2, 2019, Ms. Louks received an email from Costco HR in response to her April 16, 2019, email:

> Hi Lisa,
>
> I received your voicemail requesting a response to your email below. It is my understanding that your location was informed of your concerns and your GM Mike addressed them with you.
>
> If you would like to discuss other accommodations that would allow you to perform all of the essential functions of your position, or if your restrictions change in the future, please let Mike know and we will address additional possible accommodations at that time.
>
> Thank you.

Dkt. 44-1 at 36.  Ms. Louks responded the same day:

> Sarah,
>
> With all do respect, none of my concerns or questions have been addressed by Corporate HR or my GM. To date, I have yet to receive any explanation or justification as to why the accommodation was not approved; there has been absolutely no explanation as to why this accommodation would be unreasonable for Costco to make. I have not been told why/how the multiple recommendations of my surgeon were insufficient to warrant such an accommodation. All I was told was to go home because corporate denied it, which I later found was untrue. That was 3 weeks ago. I also have yet to be told why standing is an essential function of being a pharmacist.
>
> I also still need to know that my twelve weeks of 'accomodation' will restart once I have my epidural since I have been on leave.
>
> Mike's letter stated "my work restrictions continue to prevent me from performing all the essential functions of my hourly pharmacist position." They have never prevented me from doing every single aspect of my job since day one back from surgery. I have not been presented with any information or data that suggests or supports that intermittent sitting on a stool prevented my from performing my essential job functions. Likewise, there has been nothing to show my productivity or quality of work has declined during the time I have been accommodated with the intermittent use of the stool.
>
> No one has clearly explained how the transitional work policy applies to my situation. Based on the wording of that provision in the handbook, it doesn't appear it should apply here. I have also not been shown where it states in the return from medical leave section that there is a time limit for an accommodation.
>
> The time that has passed without any of these questions/issues being addressed by Corporate HR or the GM is inexcusable. I have been forced to used a week of sick pay and lost 40% of my wages for another 2 weeks without having these basic questions answered; without anyone explaining to me why I had to do this.
>
> Please give me the contact information of a supervisor for HR so that these answers can adequately be addressed. I appreciate your time on this matter.
>
> Thank you.
> Lisa Louks

Dkt. 44-1 at 37 (May 2, 2019, email to HR).  Costco did not respond to this email.  *Id.* at 8 ¶ 43.

On June 21, 2019, Ms. Louks filed a charge of discrimination with the EEOC alleging that Costco had failed to reasonably accommodate her and had forced her to take medical leave. *Id.* at 8 ¶ 44. She also notified Costco that she was scheduled for another back surgery but that she could work until then if she could sit intermittently. *Id.* at 38 (Jun. 24, 2019, Dr. Savage letter). Costco never responded. *Id.* at 8 ¶ 46.

Ms. Louks had her second back surgery on July 15, 2019. *Id.* at 8 ¶ 47. She was cleared to return to work on August 12 and attempted to communicate with Costco about her return and accommodation. *Id.* at 8 ¶ 48–49. Costco did not respond. *Id.*

In early September, Ms. Louks learned that her benefits would be expiring and asked if Costco would approve her accommodation so that she could go back to work. *Id.* at 40 (Sep. 3 email to HR). Costco said her doctor needed to fill out Costco's three-page long Work Restriction Form and send an updated note. *Id.* at 9 ¶ 53–54; 41-44 (Sep. 6 email from Costco with Work Restriction Form).

Instead of filling out the form, Ms. Louks's doctor, Jesse Savage, M.D., sent a letter explaining that Ms. Louks was "able to perform all functions of her job but will still require the intermittent use of a stool." *Id.* at 45 (Sep. 16, 2019, Dr. Savage letter). Three weeks later, Costco said it needed "more specific information," so Dr. Savage sent an updated letter informing Costco that he had released Ms. Louks to return to work on August 12, 2019, and that she "is able to perform all functions of her job, but will still require intermittent

daily use of a stool for approximately 5–30 minutes every 1–2 hours." *Id.* at 47 (Oct. 10, 2019, Dr. Savage letter).

Referring to Dr. Savage's letter, Costco's HR officer, Sarah Pattee, told Mr. Donaldson, "Attached are the restrictions that we received today for Lisa. Her restrictions changed during her leave and we finally received clarification on her sitting/standing restrictions." Dkt. 44-3 at 82 (Oct. 10, 2019, email to Donaldson). Ms. Pattee further recommended Ms. Louks be allowed to return for a four-week trial run of TTD and instructed Mr. Donaldson to "be sure to document [] and discuss" any related performance issues with Ms. Louks in a timely manner. *Id.*

On October 11, 2019, Mr. Donaldson told Ms. Louks that she could return to work for a four-week trial. Dkt. 44-1 at 10 ¶ 61. During that call, Ms. Louks learned for the first time that her manager, Ms. Purvis, "had made statements to the effect that" she had not been "performing [her] job completely" after her first surgery. *Id.*

On October 15, Mr. Donaldson sent Ms. Louks "transitional duty paperwork." *Id.* at 48–50 (TTD paperwork). Mr. Donaldson told her that her request to use a stool would be granted for up to 12 weeks, but if she needed the stool beyond that period she would have to go back on medical leave. Dkt. 44-1 at 11 ¶ 62.

**E. Ms. Louks returns to work again**

On October 22, 2019, Ms. Louks returned to Costco and had a yearly performance review with Ms. Purvis. *Id.* at 11 ¶ 63–65. Nothing in the review

indicated she was failing to perform the essential functions of her job. *Id.* at 11 ¶ 65. However, when asked, Ms. Purvis confirmed that she had discussed some issues with Mr. Donaldson. *Id.* at 11 ¶ 66. Specifically, she said that she once had to help a customer at the register because Ms. Louks was sitting down, and that she needed to be able to use the workstation where Ms. Louks had been sitting. *Id.* at 12 ¶ 67.

When she returned to the pharmacy, Ms. Louks found a "very awkward and unstable stool" instead of the stool she had been using. *Id.* at 12 ¶ 68. An ergonomic consultant hired by Costco later recommended a different stool, which Costco provided. *Id.* at 13–14 ¶ 80, 83.

Over the next twelve weeks, Ms. Louks needed to sit "an average" of ten to 20 minutes per shift. *Id.* ¶ 86. No one spoke to her about issues with her sitting down, her accommodation request, or an alternative accommodation. *Id.* at 14 ¶ 89. Ms. Purvis testified that Ms. Louks was using the stool less during this period, that she was "performing her duties at an ok pace" and "maintained" her workload, and that other staff in the pharmacy did not feel like they were covering for her. Dkt. 38-2 at 87, 89, 101 (Purvis Dep. at 118, 120, 132). However, because she still needed to sit down occasionally, Costco put her on medical leave again in January of 2020. Dkt. 44-1 at 14 ¶ 87–88.

### F. Ms. Louks is put on leave again

On January 15, Ms. Louks sent Costco another letter from Dr. Savage that said she could "perform all the functions of her job, but will still require intermittent daily use of a stool for approximately 5–30 minutes every 1–2

10

hours."  *Id.* at 59 (Jan. 15, 2020, Dr. Savage letter).  Costco responded on February 19 saying it still needed to clarify whether Ms. Louks's restrictions were permanent.  *Id.* at 61–62 (Feb. 19, 2020, letter).  Costco asked that she sign a release for the ergonomic consultant to speak with Dr. Savage directly "to clarify both the duration and frequency of your restrictions."  *Id.* at 62.

By this point, Ms. Louks had told Costco that her condition was permanent, dkt. 44-1 at 5–6 ¶ 32 (April 16, 2019), ¶ 38 (April 24, 2019), and Mr. Donaldson had told HR in January that "she mentioned she is dealing with a degenerative issue that will not get better."  Dkt. 44-3 at 86.

On April 9, 2020, Ms. Louks sent Costco another letter from Dr. Savage that indicated she would only need to sit 5–20 minutes every 1–2 hours.  *Id.* at 70 (Apr. 9, 2020, Dr. Savage letter).  When Costco did not respond, Ms. Louks signed a limited version of the release Costco had sent her in February.  *Id.* at 71 (May 18, 2020, revised release).  Dr. Savage did not fill out the release.[3] Costco never contacted Ms. Louks about her doctor's response.  Dkt. 44-1 at 16 ¶ 100.

### G. Ms. Louks and Costco have a job assessment meeting

Ms. Louks filed this lawsuit on July 1, 2020, alleging that Costco violated the Americans with Disabilities Act "by discriminating against [her] on the basis of her disabilities and retaliating against [her] after she requested accommodations."  Dkt. 1 at 1 ¶ 1.  Five days later, Costco invited Ms. Louks to

---

[3] Ms. Louks testified that Dr. Savage said the release "was going into too much detail and that he didn't feel . . . that was the type of information that should be just filled out."  Dkt. 38-1 at 224 (Louks Dep. 305:16–20)).

participate in a job assessment meeting to "assess whether [she could] return to [her] prior position either with or without an accommodation." Dkt. 44-1 at 74.[4]

After the job assessment meeting—twenty months after her initial request—Costco told Ms. Louks it would approve her accommodation and she could return to work on August 27, 2020. Dkt. 44-1 at 17 ¶ 108. Ms. Louks returned to work and has been allowed to sit as needed since then. *Id.* ¶ 109.

Ms. Louks claims that the prolonged time it took for Costco to grant her accommodation request violated ADA's requirement to provide a reasonable accommodation and its prohibition against retaliation. Dkt. 43 at 1–3. Costco has moved for summary judgment.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

---

[4] Costco maintains that this is not its normal procedure and that it had the meeting because Ms. Louks's doctor refused to provide the requested medical information. Dkt. 38-3 at 34.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

Costco argues that it is entitled to summary judgment on Ms. Louks's ADA claims because the delay in approving her request was reasonable under the circumstances. Dkt. 40 at 1. Ms. Louks responds that the delay was caused by Costco's failure to engage in an interactive process and that Costco retaliated against her after she filed a charge of discrimination in June 2019. Dkt. 43 at 2–3.

### A.  Failure to Accommodate

The Americans with Disabilities Act requires covered employers to reasonably accommodate the "known physical or mental limitations of an otherwise qualified individual with a disability who is an [] employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112 (b)(5)(A). To establish a claim for failure to accommodate, a plaintiff must show: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013).

It is undisputed that Ms. Louks had a disability that Costco was aware of, so the Court need only consider whether she has presented evidence from

which a reasonable jury could find that she was (1) a qualified individual and (2) that Costco failed to reasonably accommodate her disability.

### 1. Qualified Individual

Determining whether a plaintiff was a "qualified individual" during the relevant period is a two-step inquiry. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (citing 29 C.F.R. app. § 1630.2(m)).  The first question is whether the plaintiff "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* (quotations omitted).  Costco concedes that Ms. Louks satisfies the prerequisites, dkt. 40 at 21, so the Court considers "whether or not [Ms. Louks] can perform the essential functions of the position held [] with or without reasonable accommodation." *Id.*

Costco argues that Ms. Louks's request to be able to sit on an intermittent basis interfered with her ability to perform the essential functions of her job as a pharmacist.  Dkt. 40 at 22–23.  Ms. Louks responds that a reasonable jury could find from the designated evidence that she could perform the essential functions of her job as a pharmacist while being able to sit intermittently.  Dkt. 43 at 23.

"An essential function is a fundamental job duty required of a person in the job." *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(1)).  Generally, a court may "presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Office of the Chief*

*Judges of the 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010).  "[T]he content of a job description is merely one of several factors courts consider when determining whether a function is essential."  *Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016).  Other "[f]actors that may be taken into account" include:

a) The employer's judgment as to which functions are essential;
b) Written job descriptions prepared before advertising or interviewing applicants for the job;
c) The amount of time spent on the job performing the function;
d) The consequences of not requiring the incumbent to perform the function;
e) The terms of a collective bargaining agreement;
f) The work experience of past incumbents in the job; and/or
g) The current work experience of incumbents in similar jobs.

*Shell*, 789 F.3d at 717–18 (quoting 29 C.F.R. § 1630.2(n)(3)).  Under factors (f) and (g), courts "look to evidence of the employer's actual practices in the workplace."  *Miller v. Ill. Dep't. of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011).  Ultimately, "[t]he essential function inquiry is a factual question, *not* a question of law."  *Brown*, 827 F.3d at 613.

Costco has designated its written policy that provides that "during essential functions" a pharmacist must be capable of "frequently" walking and standing, and "never" sitting.  Dkt. 38-6 at 4.  Further, during periods of TTD, Costco excuses certain essential functions, temporarily, while the employee heals from an injury.  *See* dkt. 38-5 at 13; dkt. 38-4 at 75:2–5.  Ms. Purvis testified that during the first period of TTD between January and April of 2019, Ms. Louks would sit for "several hours", or between 25 – 50 percent of her shift when they worked together.  Dkt. 38-2 at 52 (Purvis Dep. at 69).  Ms. Purvis

also said that she would have to pick up the slack on member consults and going to the register because Ms. Louks needed to sit at the station where Ms. Purvis normally worked.  *Id.* at 41-43 (Purvis Dep. at 68–71).  Similarly, Mr. Donaldson testified that during this period Ms. Purvis's workload had gone up because Ms. Louks wasn't going to the register as often and that she was sitting roughly two to four hours a day because of her pain.  Dkt. 38-4 at 22–23, 25, 34–35 (Donaldson Dep. at 41–42, 44, 53–54).

According to Costco, Ms. Louks's need to sit on an intermittent basis therefore conflicted with her ability to perform the essential functions of her role "because she was restricted from walking or standing 'frequently' (i.e., up to 5 hours per shift for each activity)" and because the pharmacy's small size meant employees needed to be able to move around freely.  Dkt. 40 at 23, 25; dkt. 38-1 at 22; dkt. 38-30.  But the Court does not need to accept this assessment if Ms. Louks "offers sufficient evidence to the contrary."  *Gratzl*, 601 F.3d 679.

Ms. Louks has designated evidence that her intermittent sitting did not disrupt the pharmacy or prevent her from performing the essential functions of her job.  Since she first returned to work in January of 2019, she has been able to "stand for at least five (5) hours of her eight (8) hour shift" as required by the written job description.  Dkt. 44-1 at ¶ 110. She also points out that certain "essential functions" listed in Costco's written job description, *supra* at 3, require the pharmacist to sit, such as administering immunizations, dkt. 44-1 at 2 ¶ 7, and that tasks that require standing, such as ringing customers up at

16

the cash register, were not part of her primary duties, *id.*; *see also* dkt. 38-1 at 72 (Purvis Dep. at 103).  While co-workers offered at times to get something off the printer or she may ask someone to reach down to grab something for her, dkt. 38-1 at 167-68 (Louks Dep. at 243-44), she never asked her co-workers or other employees in the pharmacy to perform her job duties, dkt. 44-1 at ¶ 110.[5]

With respect to the period between January and April of 2019, Ms. Louks stated that she only needed to sit for short periods of time to take the pressure off her spine, dkt. 44-1 at ¶ 18, and "never prevented [her] from doing every single aspect of my job since day one back from surgery," dkt. 44-1 at 37 (May 2, 2019 email from Louks to Costco HR).  Ms. Hall, a pharmacy technician who often worked entire shifts with her, attested that she never saw Ms. Louks refuse to perform any task, such as providing patient consultations, or ask another co-worker to perform those tasks; no one complained about her use of the stool; and she did not use the stool "for a lengthy period:" at most sitting about 15 minutes at a time.  Dkt. 44-6 at 2.

---

[5] Costco argues that ¶ 110 of Ms. Louks's declaration, dkt. 44-1, conflicts with her deposition testimony that others offered to help or that this amounted to teamwork, dkt. 46 at 7, and does not create an issue of fact because Ms. Purvis stated that others were doing her tasks.  While a plaintiff cannot create an issue of fact by submitting an affidavit that is "materially different" and "contradicts prior sworn testimony," *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005), the statements provided in the deposition and affidavit are consistent with Ms. Louks's position that she did not ask others to "perform her job duties."  A jury may credit Ms. Purvis's recollection instead, but that is for the jury to decide.

With respect to Ms. Louks's second period back at Costco, between October 2019 and January 2020, Ms. Louks sat an average of 10-20 minutes per shift and no one at Costco raised any concerns to her about her job performance.  Dkt. 44-1 at ¶¶ 86, 89.  This is supported by Ms. Purvis's testimony that Ms. Louks was using the stool less during this period, that she was "performing her duties at an ok pace" and "maintained" her workload, and that other staff in the pharmacy did not feel like they were covering for her. Dkt. 38-2 at 87, 89, 101 (Purvis Dep. at 118, 120, 132).

The designated evidence shows that there are material facts in dispute regarding whether Ms. Louks was able to perform the essential functions of her job with or without the accommodation of intermittent sitting.  Viewing the evidence in the light most favorable to Ms. Louks, a jury could find that "never" sitting was not necessary to perform the essential functions of Ms. Louks's role considering Costco's "actual practices in the workplace."  *Miller*, 643 F.3d at 198 (reversing summary judgment because there was "a genuine dispute over whether conducting work high in the air was essential, and it should have been left for the jury to resolve"); *Shell*, 789 F.3d at 721 (reversing summary judgment because "there is evidence and reasonable inferences favorable to both parties and the factual record does not establish as a matter of law that driving a bus was an essential function" of plaintiff's position).  Reaching either conclusion will require making factual findings and credibility determinations, functions that are reserved for a jury.  *Brown*, 827 F.3d at 613.

## 2. Failure to Provide Reasonable Accommodation

18

The parties agree that Costco reasonably accommodated Ms. Louks's disability by allowing her to sit intermittently during her shifts in the pharmacy since August of 2020.  Dkt. 40 at 16 ¶ 65; dkt. 43 at 20.  They dispute whether the twenty months it took to approve that request was reasonable under the circumstances.

"An employee begins the accommodation process by notifying her employer of her disability; at that point, an employer's liability is triggered for failure to provide accommodations." *Spurling v. C &M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014).  A failure to accommodate claim can be based on "[a]n unreasonable delay in providing an accommodation for an employee's known disability." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020).  "Whether a particular delay qualifies as unreasonable necessarily turns on the totality of the circumstances," and "on the facts of a given case." *Id.* at 621–22.  Relevant factors include: "the employer's good faith in attempting to accommodate the disability, the length of delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered reasonable alternatives." *Id.*

### a. Length of delay and nature, complexity, and burden of the accommodation requested

The record shows that it took twenty months for Costco to approve a request that would allow Ms. Louks to sit intermittently during her shifts.  Dkt. 44-1 at ¶¶ 15, 109.  Costco contends that approving the request would put a burden on the pharmacy because others may have to help Ms. Louks with certain tasks and a chair or stool may get in the way of workers moving around

19

in the small space, dkt. 38-4 at 22–23, 25, 34–35 (Donaldson Dep. at 41–42, 44, 53–54).  Ms. Louks has designated evidence that her occasional sitting did not interfere with her or others' ability to do their jobs and that, in fact, the stool she wanted to use had already been in the pharmacy before she started using it, dkt. 44-6 at 2 (Hall Affidavit); dkt. 44-1 at ¶¶ 17, 110.  Therefore, a jury could reasonably find that taking twenty months to approve Ms. Louks's request was not complex and did not put an unreasonable burden on Costco.

While a twenty-month delay may be reasonable, it depends on the facts and circumstances.  In *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000), the plaintiff wanted his position as a millwright to be totally restructured to accommodate for his disability.  The employer denied that specific accommodation but attempted to find another position for him "on a weekly basis" for twenty months and reassigned him "as soon as an appropriate position became available." *Id.* at 1017.  Here, the request to be allowed to sit on an intermittent basis was less complicated and there are periods of time when Costco failed to keep Ms. Louks apprised of any attempts to resolve her request.  *See* dkt. 44-1 at 37; *id.* at 8 ¶ 43; *id.* at 8 ¶ 46; *id.* at 8 ¶ 48–49.  Therefore, based on the designated evidence in this case, a jury could find that the twenty-month period to resolve the request was not reasonable.

### b. Good faith attempts to accommodate and reasons for the delay

Costco maintains that it engaged in good faith attempts to accommodate and the delay occurred because Ms. Louks and her doctors did not adequately respond to Costco' requests for medical documentation.  Dkt. 40 at 24–28.  Ms.

Louks argues that she provided ample medical documentation, but Costco repeatedly failed to engage in a good faith, interactive process to resolve her accommodation request. Dkt. 43 at 27–32.

An employer may deny an accommodation request, or delay its response to an accommodation request, because of lack of requested medical documentation. *See Igasaki*, 988 F.3d at 961–62; *Keen v. Merk Sharp & Dohme Corp.*, 819 F. App'x 423, 427 (7th Cir. 2020) (finding request for accommodation reasonably denied because, after approving two doctor-ordered accommodations, the employee "never provided sufficient information to support" a third, different accommodation that her doctor had cleared her to work without). But "the ADA requires employers to engage in an interactive process with disabled employees needing accommodation so that together they can identify the employee's needs and discuss accommodation options." *Emerson v. Northern States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001). An employer is liable for a breakdown in the interactive process if it leads "to the employer's failure to provide a reasonable accommodation." *Id.* "A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 505 (7th Cir. 2020).

Costco argues it was not responsible for the breakdown in the interactive process was due to Ms. Louks and her doctors' failure to provide information that Costco had requested. Dkt. 40 at 24. Costco cites evidence that Dr.

Rowan failed to respond to its requests for clarification about whether Ms. Louks's restrictions were temporary or permanent, dkt. 40 at 14 ¶ 54; that Ms. Louks delayed signing the medical release that would allow Dr. Savage to speak to the ergonomic consultant, *id.* at ¶¶ 57-58; and that he ultimately refused that request, *id.* ¶ 59, 61. Costco argues that, without doctor clarification, it could not determine if Ms. Louks's restrictions meant that she could be sitting as much as 30 or 20 minutes out of every hour without the ability to get up as needed. Dkt. 46 at 8.

Even so, there are genuine issues of material fact regarding responsibility for the breakdown in the interactive process. Ms. Louks has designated evidence that she provided Costco with nine letters or other forms of documentation from her physicians, each explaining that Ms. Louks could work subject to the need to sit intermittently on an as-needed basis. Dkt. 44-1 at 19–25, 26, 27–29, 34–35, 38, 45, 47, 59, 70. In fact, she points out, Costco's HR emailed Mr. Donaldson in October of 2019, saying that "[Ms. Louks's] restrictions changed during her leave and we finally received clarification on her sitting/standing restrictions," dkt. 44-3 at 82 (Oct. 10, 2019, email to Donaldson), but then Costco would not allow her to return to work in January of 2020 when Dr. Savage's letter was identical to the letter sent in October. *See* dkt. 44-1 at 47, 59. Moreover, Ms. Louks points to numerous instances in which she sought clarification from Costco on what was needed for her request to be approved to which Costco never replied. *See* dkt. 44-1 at 37; *id.* at 8 ¶ 43; *id.* at 8 ¶ 46; *id.* at 8 ¶ 48–49.

Therefore, there is some evidence of "obstruction" and "fail[ure]s to communicate, by way of initiation or response," on both sides.  *Williams*, 982 F.3d at 505.  Viewing the evidence in the light most favorable to Ms. Louks, a jury could reasonably find from the designated evidence that, as the party responsible for making reasonable accommodation, Costco was responsible for breakdowns in the interactive process that resulted in her accommodation not being approved for twenty months.  *McCray*, 966 at 621.

### c.  Offering reasonable alternatives

Costco argues that, because there is evidence it made some effort to accommodate Ms. Louks, e.g., offering TTD and medical leave, mentioning the "possibility" of an adjusted schedule, and providing an ergonomic consultant, dkt. 40 at 23–24, 28–31, it cannot be liable for failure to reasonably accommodate, *id.* at 28.

The ADA does not require an employer to provide the specific accommodation that the employee requests, instead it is obligated only to provide "some reasonable accommodation".  *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 967–68 (7th Cir. 2020) ("[w]hether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties.").

Even if a jury were to find that the period of TTD provided a temporary accommodation for her condition, a reasonable jury could find that requiring her to go on medical leave for two extended periods of time was not a

reasonable accommodation.  Costco relies on *McAllister*, 983 F.3d at 971, and *Swanson v. Vill. Of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015) for proposition that providing medical leave is a reasonable accommodation.  *See* Dkt. 40 at 23–24.  However, in both cases, the employee *requested* medical leave and, for reasons specific to each case, the Seventh Circuit found that granting temporary leave was reasonable because the employees were not able to perform the essential functions of their roles.  *See McAllister*, 983 F.3d at 971–93 (where the employee's doctor had forbidden the employee from performing "any and all" work while her condition persisted); *Swanson*, 794 F.3d at 827–28 (where the employee's request to use leave was granted until a second stroke rendered him "completely unable to resume the responsibilities" of his job).

Here, by contrast, Costco *required* Ms. Louks to take medical leave in April of 2019 even after Dr. Rowan said Costco should "continue to provide a reasonable accommodation to allow her a chair while working", dkt. 44-1 at 27, and in January of 2020 after Dr. Savage said she could "perform all functions of her job" provided that she be able to sit as needed.  Dkt. 44-1 at 45, 47, 59. Moreover, Ms. Louks has designated evidence from which a jury could find that Ms. Louks was able to perform her essential duties all along and that Costco knew her condition was permanent, *see supra* at 13–17 (Qualified Individual analysis).  Therefore, a jury could find that offering these alternative accommodations were unnecessary and unreasonable under the circumstances.

24

*     *     *

Viewing the totality of the circumstances present here, a reasonable juror could find that Costco did not make good faith attempts to resolve Ms. Louks' simple accommodation request and that it was the cause of a breakdown in the interactive process that delayed approval of her request. A reasonable jury could find that Costco failed to reasonably accommodate the known disability of a qualified employee. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013).

### B.    Retaliation

The ADA prohibits employers from retaliating against employees who opposed any act or practice made unlawful by the ADA or made a charge under the ADA. *Kersting v. Walmart Stores Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001) (quoting 42 U.S.C. § 12203(a)). To establish a prima facie claim for retaliation the employee must show (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse action. *Id.* at 1117.

Costco has moved for summary judgment on Mr. Louks's ADA retaliation claim. Dkt. 40 at 32. Ms. Louks argues that a reasonable jury could find from the designated evidence that Costco retaliated against her for filing the EEOC charge of discrimination in June 2019 by "forcing her to take a second leave of absence in January 2020, which lasted for eight months." Dkt. 43 at 32. She argues that the "forced leave of absence" is an adverse employment action and

25

that the "close temporal proximity" between the filing of the charge and the forced leave six months later "provides evidence of causation." *Id.* at 33.[6]

Filing a charge of discrimination is a "protected activity," *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017), and the Seventh Circuit has recognized that placing an employee "involuntarily on disability leave" may qualify as an adverse employment action. *Timmons v. General Motors Corp.*, 469 F.3 at 1122, 1128 (7th Cir. 2006). However, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). To prove causation, the plaintiff must show that the protected activity was a "but-for cause of the challenged employment action." *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018). That is, the plaintiff "also must put forth other evidence that reasonably suggests that her protected [] activities were related to" the adverse employment action. *Burks v. Wis. Dept. Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) (finding plaintiff had not met her burden when she presented "no evidence of a retaliatory motive other than the timing of her termination").

Here, Ms. Louks has not designated specific evidence that connects the "forced leave" decision in January of 2020 to the filing of the EEOC charge in

---

[6] Ms. Louks does not respond to Costco's argument that a retaliation claim must allege adverse action that is independent from a failure to accommodate claim, *see* dkt. 40 at 31–32, dkt. 46 at 16–17, therefore any argument on that point is considered waived. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop,* 991 F.2d 1249, 1258 (7th Cir.1993) (summary judgment arguments not responded to are conceded and waived).

July of 2019.  And Costco points out that between the filing of the charge and the January 2020 leave of absence, Costco brought her back to work for a period of TTD.  Ms. Louks has not designated evidence from which a reasonable jury could find that the July 2019 EEOC charge was the "but-for" cause of Costco's decision to put Ms. Louks on "forced leave" six months later. *Burks*, 464 F.3d at 759.

Therefore, Costco is entitled to summary judgment on Ms. Louks's retaliation claim.

## IV.
## Conclusion

Costco's motion for summary judgment is **DENIED** on Ms. Louks's reasonable accommodation claim and **GRANTED** on her retaliation claim.  Dkt. [39].  Costco's motion to strike Ms. Louks's surreply is **DENIED**, dkt. [50], because the surreply was specific to the objections raised in Costco's reply brief, *see* S.D. Ind. L.R. 56-1(d).

The Magistrate Judge is asked to set this matter for a status conference to discuss settlement and trial readiness.

**SO ORDERED**.

Date: 9/6/2022

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Alexandra Jeanne Blackwell
JESELSKIS BRINKERHOFF AND JOSEPH LLC
ablackwell@jbjlegal.com

Erin D. Foley
SEYFARTH SHAW LLP
edfoley@seyfarth.com

Kimberly D. Jeselskis
JESELSKIS BRINKERHOFF AND JOSEPH LLC
kjeselskis@jbjlegal.com

MacKenzie Adair Johnson
JESELSKIS BRINKERHOFF AND JOSEPH LLC
mjohnson@jbjlegal.com

Kyla J. Miller
SEYFARTH SHAW LLP (Chicago)
kjmiller@seyfarth.com